1    (List of Attorneys for Defendants
     Provided on Signature Pages)

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   BIG BABOON, INC.,                    Case No. 09-CV-1198-SVW (SS)

12              Plaintiff,               **MEMORANDUM OF POINTS AND
                                         AUTHORITIES IN SUPPORT OF**
13        vs.                            **DEFENDANTS' JOINT MOTION
                                         FOR SUMMARY JUDGMENT OF**
14   DELL INC. et al.,                   **INVALIDITY BASED ON LACK OF
                                         PATENTABLE SUBJECT MATTER**
15              Defendant.
                                         Date:     September 21, 2009
16                                       Time:     1:30 P.M.
                                         Ctrm:     6 (Hon. Stephen V. Wilson)
17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND....................................3

III.  LEGAL STANDARDS .........................................................................6

    A.  Law Of Summary Judgment ...........................................................6

    B.  *Bilski* And The Requirements For Patentable Subject Matter ..............6

        1.  The Machine Prong.........................................................7

        2.  The Transformation Prong.................................................8

IV.  ARGUMENT .....................................................................................9

    A.  The Asserted Claims Are Not Patentable Because They Cover Abstract Ideas And Broadly Preempt The Performance Of Common Methods Of Conducting Business .......................................9

    B.  The Asserted Claims Do Not Meet The *Bilski* Machine Test ...........10

        1.  A Web-Enabled Relational Database System Is Not A "Particular Machine" ...................................................11

        2.  The Recitation Of A "Web-Enabled Relational Database System" Is, At Most, An Unacceptable Field-Of-Use Limitation ...............................................................13

        3.  The Functions Performed By The Web-Enabled Relational Database System Constitute Insignificant Extra-Solution Activity...........................................15

        4.  The Remaining Claim Terms Fail For The Same Reasons ......16

    C.  The Asserted Claims Do Not "Transform A Physical Article Into A Different State Or Thing" .......................................................18

        1.  The Process Steps Of The Asserted Claims Involve Non-Transformative Business Processes.........................................18

            a.  The Visual Depictions Of The Asserted Claims Are Not Patent-Eligible Transformations .............................21

        2.  The Data Of The Asserted Claims Represent Abstractions, Not Physical Objects or Substances ...................22

    D.  All Of The Asserted Claims Are Method Claims...............................24

V.  CONCLUSION .................................................................................25

**Page**

## CASES

*Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*,
731 F.2d 831 (Fed. Cir. 1984) ............................................................... 6

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................. 6

*CyberSource Corp. v. Retail Decisions, Inc.*,
620 F. Supp. 2d 1068 (N.D. Cal. 2009) .................................... *passim*

*DealerTrack, Inc. v. Huber*,
2009 WL 2020761 (C.D. Cal. July 7, 2009) .............................. *passim*

*Diamond v. Diehr*,
450 U.S. 175 (1981) ................................................................... *passim*

*Every Penny Counts, Inc. v. Bank of America Corp.*,
No. 07-cv-42 (M.D. Fla. May 27, 2009) ............................................ 25

*Fort Properties, Inc. v. American Master Lease, LLC*,
609 F. Supp. 2d 1052, 1056 (C.D. Cal. 2009) ................................... 22

*Gottschalk v. Benson*,
409 U.S. 63 (1972) ..................................................................... *passim*

*Harrington Manufacturing Co. v. Powell Manufacturing Co.*,
815 F.2d 1478 (Fed. Cir. 1986) ........................................................... 6

*In re Abele*,
684 F.2d 902 (C.C.P.A. 1982),
*abrogated on other grounds by*
*In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) ..................... 18, 20, 21, 24

*In re Bilski*,
545 F.3d 943 (Fed. Cir. 2008) (en banc),
*cert. granted sub nom. Bilski v. Doll*, 129 S. Ct. 2735 (2009) ... *passim*

*In re Grams*,
888 F.2d 835 (Fed. Cir. 1989) ................................................. 8, 12, 15

*In re Pardo*,
684 F.2d 912 (C.C.P.A. 1982) ........................................................... 24

*In re Sarkar*,
588 F.2d 1330 (C.C.P.A. 1978) ......................................................... 25

*In re Schrader*,
22 F.3d 290 (Fed. Cir. 1994) ..................................... 15, 16, 18, 19

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Invitrogen Corp. v. Biocrest Manufacturing, L.P.*,
    424 F.3d 1374 (Fed. Cir. 2005) ........................................................... 6

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ............................................................................ 6

*Parker v. Flook*,
    437 U.S. 587 (1978) .............................................................. 7, 9, 11

*State Street Bank & Trust Co. v. Signature Financial Group, Inc.*,
    149 F.3d 1368 (Fed. Cir. 1998) ......................................................... 3

**STATUTES**

35 U.S.C. § 101 .............................................................................*passim*

**RULES**

Fed. R. Civ. P. 56(c) ........................................................................... 6

**ADMINISTRATIVE DECISIONS**

*Ex parte Cornea-Hasegan*,
    No. 2008-4742, 2009 WL 86725 (B.P.A.I. Jan. 13, 2009) ............... 13

*Ex parte Gutta*,
    No. 2008-3000, 2009 WL 112393 (B.P.A.I. Jan. 15, 2009) ............... 8

*Ex parte Halligan*,
    No. 2008-1588, 2008 WL 4998541 (B.P.A.I. Nov. 24, 2008) ........... 13

*Ex parte Harris*,
    No. 2007-0325, 2009 WL 86719 (B.P.A.I. Jan. 13, 2009) ........... 7, 17

*Ex parte Koo*,
    No. 2008-1344, 2008 WL 5054161 (B.P.A.I. Nov. 26, 2008) ........ 8, 11, 12

*Ex parte Langemyr*,
    No. 2008-1495, 2008 WL 5206740 (B.P.A.I. May 28, 2008) ........ 8, 12

*Ex parte Nawathe*,
    No. 2007-3360, 2009 WL 327520 (B.P.A.I. Feb. 9, 2009) ............. 8, 13

*Ex parte Shahabi*,
    No. 2008-2472, 2009 WL 1067191 (B.P.A.I. Apr. 20, 2009) ........ 8, 12

I.    **INTRODUCTION**

In this patent infringement litigation, Plaintiff Big Baboon, Inc. ("BBI") has asserted claims 36, 43, 50, 54, 74, 76, 77, and 81 of U.S. Patent No. 6,115,690 ("the '690 patent") and claims 1, 4, 11, 13, 16, and 18 of U.S. Patent No. 6,343,275 ("the '275 patent") against the Defendants collectively (the "Asserted Claims").[1]  The undersigned Defendants bring this early motion for summary judgment of invalidity because these fourteen claims do not satisfy the test for patent eligibility announced by the Federal Circuit in *In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) (en banc), *cert. granted sub nom. Bilski v. Doll*, 129 S. Ct. 2735 (2009).

The Asserted Claims relate to the performance of age-old business processes using a computer, and in some cases a global computer network such as the World Wide Web ("the Web").  For example, claim 81 of the '690 patent relates to the processing of orders; claims 50 and 74 of the '690 patent and claim 1 of the '275 patent relate to processing sales returns; claim 54 of the '690 patent relates to maintaining a general accounting ledger; and claim 18 of the '275 patent explicitly calls for a computer to automate "business decisions normally made by an experienced human decision maker."  The claims thus attempt to broadly preempt the performance of common business activities using a computer and/or the Web.

Although 35 U.S.C. § 101 lists "processes" as a category of patentable subject matter, not all processes are eligible for patent protection.  Those that seek to claim what the law deems a fundamental principle, such as an abstract intellectual concept, a mental process, or a natural phenomenon, or other subject matter allowing the patentee to preempt substantially all uses of that fundamental principle, are not.[2]

---

[1] As explained in the factual background section below, a subset of these fourteen claims has been asserted against each Defendant.

[2] *E.g.*, *Diamond v. Diehr*, 450 U.S. 175, 185 (1981); *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972).

8631914.1

The *Bilski* court clarified that whether a given patent claim "recites a fundamental principle, and, if so, whether it would preempt substantially all uses of that fundamental principle if allowed," is determined through application of the "machine-or-transformation test." *Bilski*, 545 F.3d at 954. Under this test, a claimed process (or method) is not patent-eligible unless "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Id.*[3] The Asserted Claims do not meet either prong.

First, although the Asserted Claims use slightly varied terms — Web-enabled database, relational database management system, computer net, computer network, server platform, and display — they all refer, at most, to the use of a general-purpose computer and/or the Web. Neither suffices to tie the claimed methods to any "particular machine or apparatus," as recent decisions in this District and the Northern District of California following *Bilski* make clear. *DealerTrack, Inc. v. Huber*, 2009 WL 2020761, at *3-4 (C.D. Cal. July 7, 2009); *CyberSource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068, 1076-78 (N.D. Cal. 2009).

Second, under the transformation prong, the claim must be directed to the transformation of a physical object or substance, or data that represent a physical object or substance, into a different state or thing. Where data are concerned, as here, manipulation of abstract constructs is insufficient. Instead, to be patent-eligible, the claimed process must transform the representative data into a different state or thing, such as a conversion of raw data representing a tangible object into a visual depiction of that object. The data of the Asserted Claims here relate to business transactions — abstractions — rather than physical or tangible

---

[3] As explained further below, even if one of these requirements is nominally met, "the use of a specific machine or transformation of an article must impose meaningful limits on the claim's scope to impart patent-eligibility," and "the involvement of the machine or transformation in the claimed process must not merely be insignificant extra-solution activity." *Bilski*, 545 F.3d at 961-62.

objects. Moreover, while the claims may describe the aggregation, classification, movement, or modification of data, none describes a "transformation" as required by the case law.

Application of the "machine-or-transformation" test to the Asserted Claims reveals that what BBI seeks to claim — abstract concepts and mental processes involved in the everyday performance of business functions — is not patentable subject matter. To hold otherwise would broadly preempt the automation of traditional business transactions. Accordingly, summary judgment of invalidity is warranted.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The '690 and '275 patents are "parent" and "child" patents: the '275 patent is a continuation of the '690 patent. Thus, they list the same inventor, Charles Wong, they share a common specification, and they claim priority to the same patent application filed on December 22, 1997.[4] The patents also have the same title, "Integrated Business-To-Business Web Commerce And Business Automation System," and claim the same general subject matter relating to the performance of commonplace business functions.

The First Amended Complaint, filed May 7, 2009, broadly asserts infringement by the Defendants of the '690 and '275 patents, without specifying particular patent claims alleged to be infringed. After urging by the Defendants, in June, Plaintiff identified the claims that formed the purported basis for the filing of the lawsuit. Biddinger Decl. ¶ 3; *see also* Biddinger Decl. Ex. D at 28, 32 (Plaintiff's counsel stating, "We identified for them the ones we could satisfy under

---

[4] The '690 patent has a September 5, 2000 issue date and the '275 patent a January 29, 2002 issue date. When these patents issued, a test from Federal Circuit's decision *State Street Bank & Trust Co. v. Signature Financial Group, Inc.*, 149 F.3d 1368 (Fed. Cir. 1998), was applicable to the analysis of patent-eligibility under 35 U.S.C. § 101. *Bilski* rejected the test from *State Street Bank*. *Bilski*, 545 F.3d at 959-60 ("Therefore, we also conclude that the 'useful, concrete, and tangible result' inquiry [of *State Street*] is inadequate . . . .").

Rule 11 . . . .  We carefully narrowed those only to the ones that we knew we could do under Rule 11.").[5]

The degree to which the Asserted Claims attempt to preempt the performance of traditional business processes is demonstrated by the diversity of businesses and industries represented by the accused Defendants: Internet retailers; an automobile manufacturer; computer and software manufacturers and distributors; pharmaceutical distribution companies; office product suppliers; and package delivery companies. *See* Biddinger Decl. ¶ 3.  This expansive — and highly conceptual — view of the scope of the patents was confirmed at the New Case Status Conference, where BBI's counsel suggested that the Plaintiff's invention enabled the global integration of all modern business processes. Biddinger Decl. Ex. D, at 10-13.[6]

When pressed by the Court to explain the innovation of the purported invention and how it is distinct from "the way modern business works," BBI's counsel argued that the patents are not merely conceptual, but rather "describe[e] specifically how the data can be aggregated and how the networking can be done to enable that." *Id*. at 15.  Even if BBI's description of the specification were correct (and it is not), as explained in detail below, data aggregation and networking are far from patent-eligible subject matter.

The Asserted Claims can be summarized as follows:[7]

---

[5] "Biddinger Decl." refers to the Declaration of Brian P. Biddinger in Support of Defendants' Joint Motion for Summary Judgment, submitted concurrently herewith.

[6] The Plaintiff's explanation of the "invention" at the hearing echoes its purely functional description in the patent specification: "The present invention, generally speaking, provides software that enables end-to-end, business-to-business Web commerce . . . that automates to the greatest degree possible . . . the various aspects of running a successful and profitable business."  Biddinger Decl. Ex. A, col. 4, ll. 7-12.

[7] The Asserted Claims are set out in their entirety in Exhibit C to the Biddinger Declaration and in Defendants' Separate Statement of Uncontroverted Facts and Conclusions of Law.  By describing the Asserted Claims here and in this brief generally, Defendants are not intending to take a position as to the meaning of any

| '690 patent | Summary |
|---|---|
| Claim 36 | Updating business data for viewing across business domains |
| Claim 43 | Generating and storing product price quotes |
| Claim 50 | Processing returns |
| Claim 54 | Maintaining a general accounting ledger |
| Claim 74 | Processing returns |
| Claim 76 | Selecting products to be installed together |
| Claim 77 | Automating a supply chain between a vendor and seller |
| Claim 81 | Tracking order status |
| **'275 Patent** | **Summary** |
| Claim 1 | Processing returns |
| Claim 4 | Gathering and organizing demand information |
| Claim 11 | Classifying and displaying items consistent with common business practices |
| Claim 13 | Organizing data based on business functions, allowing users to view data related to different business functions, providing a user interface to the information, and defining business departments based on who has access to what information |
| Claim 16 | Making data from one business function available to users responsible for other business functions |
| Claim 18 | Automating a human decisionmaking process |

particular claim term or whether a claim term limits the claim, and reserve the right to present evidence and/or argument on any claim construction issue, including whether any claim construction is required for purposes of this motion.

## III. LEGAL STANDARDS

### A. Law Of Summary Judgment

Summary judgment is appropriate in a patent case, as in any other case, "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984). Patents are presumed to be valid, and thus a party asserting invalidity has the burden of establishing invalidity by clear and convincing evidence. *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1378 (Fed. Cir. 2005). Once a prima facie case of invalidity is shown, however, the patentee must come forward with rebutting material evidence to avoid summary judgment. *Harrington Mfg. Co. v. Powell Mfg. Co.*, 815 F.2d 1478, 1482 (Fed. Cir. 1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial'").

### B. *Bilski* And The Requirements For Patentable Subject Matter

The "threshold inquiry" of patent validity is whether a claim meets the subject matter requirements of 35 U.S.C. § 101, which is a question of law for the Court. *Bilski*, 545 F.3d at 950-51. Section 101 provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has made clear that Section 101 is not to be read literally, for not every discovery is eligible for patent protection. A claim is not patent-eligible if it claims a fundamental principle such as an abstract idea, mental process, or a natural phenomenon, even it nominally falls within one or more of the statutory categories. *Diamond v. Diehr*, 450 U.S. 175, 185 (1981) (citing *Parker v. Flook*, 437 U.S. 587

1    (1978); *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). As was the case in *Diehr*, a

2    patent claim may be patent-eligible if it involves a fundamental principle, so long as

3    it does not "preempt the use" of that fundamental principle. *Id*. at 187.[8]

4           In October of 2008, the Federal Circuit clarified that a claimed process

5    is not patent-eligible unless: "(1) it is tied to a particular machine or apparatus, or

6    (2) it transforms a particular article into a different state or thing." *Bilski*, 545 F.3d

7    at 954. However, this is not the end of the inquiry. The Federal Circuit explained,

8    "the use of a specific machine or transformation of an article must impose

9    meaningful limits on the claim's scope to impart patent-eligibility," and "the

10   involvement of the machine or transformation in the claimed process must not

11   merely be insignificant extra-solution activity." *Id*. at 961-62.

### 1.      The Machine Prong

13          Because the claims at issue in *Bilski* did not involve a machine,[9] the

14   court left to future cases "the elaboration of the precise contours" of the machine

15   prong of the test. *Id*. at 962. District courts and the appellate tribunal of the Patent

16   Office — the Board of Patent Appeals and Interferences ("BPAI") — have

17   accepted this invitation, and have provided substantial guidance as to the question

18   of what constitutes a particular machine under *Bilski*.

19          First, the performance of a claimed process "over the Internet," or over

20   a "network" does not suffice to tie that process "to a particular machine or

21   apparatus." *E.g.*, *CyberSource*, 620 F. Supp. 2d at 1076-78 ("over the Internet");

22   *Ex parte Harris*, No. 2007-0325, 2009 WL 86719, at *5 (B.P.A.I. Jan. 13, 2009)

---

[8] At issue in *Diehr* was a process for curing rubber that involved a well-known mathematical equation. The Court upheld the patent claims because, in contrast to the claims at issue in *Flook*, which involved only a formula, the claims at issue "d[id] not seek to preempt the use of that equation. Rather, they s[ought] only to foreclose from others the use of that equation in conjunction with all of the other steps in their claimed process." *Diehr*, 450 U.S. at 187.

[9] In *Bilski*, the applicant admitted that the claim at issue — a claim for a process to manage risks in commodities trading (i.e., hedging) — did not limit any process step to any specific machine or apparatus. *Bilski*, 545 F.3d at 962.

("over a network"). Second, the use of a "database" or a "relational database management system" fails the machine prong. *Ex parte Koo*, No. 2008-1344, 2008 WL 5054161, at *7-8 (B.P.A.I. Nov. 26, 2008) ("relational database management system"); *Ex parte Shahabi*, No. 2008-2472, 2009 WL 1067191 (B.P.A.I. Apr. 20, 2009); *Ex parte Nawathe*, No. 2007-3360, 2009 WL 327520 (B.P.A.I. Feb. 9, 2009). Third, claims reciting the use of general-purpose processors or computers to perform method steps do not satisfy the *Bilski* particular machine test. *E.g.*, *DealerTrack*, 2009 WL 2020761, at *3-4 (processes implemented on computer hardware and a database); *Nawathe*, 2009 WL 327520, at *4-5 (general-purpose processor). Finally, claims reciting a step of "displaying" do not meet the "particular machine" test because "displaying" need not be performed by any particular structure. *Ex parte Gutta*, No. 2008-3000, 2009 WL 112393, at *3 (B.P.A.I. Jan. 15, 2009); *Ex parte Langemyr*, No. 2008-1495, 2008 WL 5206740 (B.P.A.I. May 28, 2008) (finding a step of "displaying" to be only a nominal or token recitation of structure "incidental" to transformation).

## 2. The Transformation Prong

The *Bilski* court did delve into the transformation prong of the test, making it clear that a transformation of "a particular article into a different state or thing," would be patent-eligible when the transformed data represent physical and tangible objects, but not when the purported transformation relates to "abstractions": "Purported transformations or manipulations simply of public or private legal obligations or relationships, business risks, or other such abstractions cannot meet the test because they are not physical objects or substances, and they are not representative or physical objects or substances." *Bilski*, 545 F.3d at 963. *Bilski* further explained that "physical steps" such as inputting, calculating, outputting, and storing data are insufficient to effect a transformation, *id*. at 961, as is data gathering. *Id*. at 963 (citing *In re Grams*, 888 F.2d 835, 840 (Fed. Cir. 1989)).

# IV.  ARGUMENT

## A.  **The Asserted Claims Are Not Patentable Because The Plaintiff Would Have Them Cover Abstract Ideas And Broadly Preempt The Performance Of Common Methods Of Conducting Business**

The claims of the asserted patents cover abstract ideas in the form of common methods of conducting business, such as placing orders, handling returns, and processing data files.  Based on Plaintiff's explanation of the patents at the New Case Status Conference, it is clear that Plaintiff views his patents as covering any company that conducts business using the Web and/or a computer.  *See supra* section II; *see also* Biddinger Decl. Ex. C (claim 18 of the '275 patent referencing the use of a computer to perform the manifestly unpatentable mental process of making "business decisions normally made by an experienced human decision maker").  The Supreme Court has repeatedly deemed that attempts to broadly preempt abstract ideas in this way are not patentable.  *See Diehr*, 450 U.S. at 185 ("Excluded from . . . patent protection are laws of nature, natural phenomena, and abstract ideas."); *see also Flook*, 437 U.S. at 589; *Benson*, 409 U.S. at 67; *Bilski*, 545 F.3d at 954 ("The true issue before us then is whether Applicants are seeking to claim a fundamental principle (such as an abstract idea) or a mental process.").

That the asserted claims are unpatentable under § 101 is apparent from the proper application of the machine-or-transformation test.  *See Bilski*, 545 F.3d at 956 ("[T]he machine-or-transformation test, properly applied, is the governing test for determining patent eligibility under § 101."); *Benson*, 409 U.S. at 70.  As demonstrated below, both the machine and transformation prongs of this test demonstrate that the Asserted Claims are not patent-eligible subject matter, but rather an improper attempt by Plaintiff to preempt abstract ideas and mental processes of commonplace business transactions.

## B. The Asserted Claims Do Not Meet The *Bilski* Machine Test

None of the Asserted Claims satisfies the *Bilski* machine test. The claims merely involve commonplace methods of conducting business using the Web and/or a computer, with its software and database. Adding the Web, or a computer with a database, to a claim does not tie the claim to a particular machine. Moreover, to the extent that some of the Asserted Claims refer to performance of the claimed method using a "Web server" or "computer," "database," or "relational database," those elements, at most, impose a field-of-use restriction or constitute insignificant post-solution activity. Claim 81 of the '690 patent illustrates the point well:

> 81. A method of order fulfillment, comprising the steps of:
>
> placing an order for a part;
>
> entering the order within a **Web-enabled relational database system**;
>
> tracking each significant event in the order fulfillment process within the relational database system; and
>
> communicating the order status to at least one party via **the Web**.

Plaintiff would have claim 81 cover the common business practice of tracking the status of an order. The steps consist of placing an order, entering the order in a database, tracking the status of the order, storing the order status in the database, and communicating the status to someone via the Web. Aside from the elements in boldface type — a "Web-enabled relational database system" and the "Web" — the steps of claim 81 can all be performed in paper records or in one's mind. These steps are performed daily by sales clerks throughout the world and plainly are not patent-eligible. All the claim does is to add a relational database system and the Web. These terms do not add patentable substance. The claims still improperly preempt the use of an abstract business idea.

The Supreme Court, the Federal Circuit, multiple district courts, and the BPAI repeatedly have struck down attempts to preempt abstract ideas based on extraneous recitations of computers or computer-related devices. *See, e.g.*, *Flook*, 437 U.S. 584 (a method of calculating alarm limits with a computer unpatentable); *Benson*, 409 U.S. 63 (a method of converting binary coded decimal numbers with a computer unpatentable); *Bilski*, 545 F.3d 943 (a computerized method of hedging risk in commodities trading unpatentable); *CyberSource*, 620 F. Supp. 2d 1068 (a computerized method for detecting credit card fraud unpatentable); *DealerTrack*, 2009 WL 2020761 (a computer-aided method of managing a credit application unpatentable); *Koo*, 2008 WL 5054161 (a method for optimizing a query in a relational database management system unpatentable).

Claim 81, as with all of the Asserted Claims, does not satisfy the *Bilski* machine test for three independent reasons: (i) the claim is not tied to a "particular machine"; (ii) the recitation of elements such as a Web-enabled relational database system constitutes insignificant extra-solution activity; and (iii) the claim preempts performance of an abstract idea within a particular field of use.

### 1. A Web-Enabled Relational Database System Is Not A "Particular Machine"

Claim 81 is representative of the deficiencies of the Asserted Claims. Although it refers to the "Web" and a "Web-enabled relational database management system," claim 81 does not identify any particular machine as directing or even participating in the method. In *CyberSource*, Judge Patel squarely addressed the question of whether the Internet constitutes a "particular machine or apparatus" and concluded that it does not. *CyberSource* involved a claim for performing a common business practice — credit card verification — over the Internet. The court held that a process occurring "over the internet" is not, by virtue of that limitation, tied to a particular machine. As Judge Patel correctly reasoned, "[t]he internet continues to exist despite the addition or subtraction of any particular

piece of hardware.  It may be supposed that the internet itself, rather than any underlying computer or set of computers, is the 'machine' to which plaintiff refers. Yet the internet is an abstraction.  If every computer user in the world unplugged from the internet, the internet would cease to exist, although every molecule of every machine remained in place. . . . [O]ne cannot touch 'the internet.'" *CyberSource*, 620 F. Supp. 2d at 1077-78.  Claim 81 suffers from the same defect. The Web is no more particularized or concrete than the Internet as described in *CyberSource*.  Accordingly, claim 81's recitation of the "Web" does not suffice to tie the claim to a particular machine.

Nor does recitation of a relational database system satisfy the particular machine test.  The BPAI has found on multiple occasions that the recitation of a database or relational database management system does not disclose a particular machine.  *See, e.g.*, *Koo*, 2008 WL 5054161, at *7-9 (a method for optimizing a query in a relational database management system unpatentable); *Shahabi*, 2009 WL 1067191, at *4 (a method and system for performing a query in a database unpatentable).  According to the BPAI, recitation of a database encompasses "a collection of data elements in the abstract" and, therefore, the steps which involved querying the database "could be performed as mental steps." *Shahabi*, 2009 WL 1067191, at *4.

Even if the Asserted Claims' use of a relational database system does invoke the use of a machine, it does not specify the use of a ***particular*** machine.  At most, this element implies nominal use of a general-purpose computer without specifying particular programming.  However, recitation of a general-purpose computer is not sufficient to meet the machine prong of the machine-or-transformation test.  *See Grams*, 888 F.2d at 841; *Langemyr*, 2008 WL 5206740, at *10 (citing *Benson*, 409 U.S. at 71-72) ("Nominal recitations of structure in an otherwise ineligible method fail to make the method a statutory process."); *Ex parte Cornea-Hasegan*, No. 2008-4742, 2009 WL 86725, at *9-10 (B.P.A.I. Jan. 13,

2009). Instead, the claimed process must be tied to a particular machine. *Bilski*, 545 F.3d at 962.

In *DealerTrack*, Judge Guilford held that a claim reciting the use of a central processor of a computer was not tied to a particular machine. *DealerTrack*, 2009 WL 2020761, at *4. The asserted patent did not "specify **how the computer hardware and database are 'specially programmed'** to perform the steps claimed in the patent." *Id.* (emphasis added). Thus, the court held that "the claimed central processor is nothing more than a general purpose computer that has been programmed in some unspecified manner." *Id.*; *see also Ex parte Halligan*, No. 2008-1588, 2008 WL 4998541, at *13 (B.P.A.I. Nov. 24, 2008) (rejecting claims reciting a "programmed computer" as insufficient to tie the process claims to a particular machine); *Nawathe*, 2009 WL 327520, at *4 (rejecting a claim reciting a "computerized method" of inputting and representing XML documents, noting, "the recited method, while being computerized, is not tied to a particular machine for executing the claimed steps").

As in *DealerTrack*, the claims merely recite general computer concepts and fail to specify how the computer system and database are specially programmed to perform the steps of the claim. Additionally, like the invocation of the Internet in *CyberSource* and of a relational database in *Koo*, the Web-enabled database of the Asserted Claims is not a particular machine because it is nothing more than an abstract collection of data elements accessible from the Web. Accordingly, claim 81 fails to disclose a particular machine and is thus unpatentable.

**2. The Recitation Of A "Web-Enabled Relational Database System" Is, At Most, An Unacceptable Field-Of-Use Limitation**

Even the recitation of a specific machine is not sufficient to satisfy the *Bilski* machine test if it does not "impose meaningful limits on the claim's scope to

impart patent-eligibility." *Bilski*, 545 F.3d at 961-62. Claiming a "Web-enabled relational database system" to perform commonplace business processes such as order placement, processing, and fulfillment is not a meaningful limitation; it merely dictates that the processes will be performed using a computer and the Web. At best, such a limitation merely narrows the claim to the field of electronic commerce.

In *Bilski*, the Federal Circuit reiterated that "mere field-of-use limitations are generally insufficient to render an otherwise ineligible process claim patent-eligible." *Id.* at 957 (citing *Diehr*, 450 U.S. at 191-92). Attempts to limit an abstract idea to one technological area, no matter how large or small, cannot save an otherwise unpatentable claim. *See id.* As an example, the court noted that a claim limiting a mathematical formula to its use in surveying techniques is an improper claim. *Id*. at 957 n.13.

In *CyberSource*, the court made a similar observation: "A limitation to 'only' the vast area of online credit card transactions is not meaningful." *CyberSource*, 620 F. Supp. 2d at 1078. "The claims . . . preempt the use of fundamental mental processes across an extraordinarily large and important segment of the commercial system." *Id*. at 1077. Similarly, in this case, the claims simply apply the abstract idea of order processing and fulfillment to a particular technological environment, electronic commerce, using a Web-enabled database system. This expansive field-of-use limitation does not tie the claim to a particular machine. As was the case in *CyberSource*, an attempt to limit an abstract idea to a vast area of electronic commerce is an unlawful attempt to preempt the entirety of the abstract idea in a field of use. For the above reasons, claim 81 is unpatentable under 35 U.S.C. § 101. The other thirteen Asserted Claims also fail for incorporating, at best, impermissible field limitations.

### 3. The Functions Performed By The Web-Enabled Relational Database System Constitute Insignificant Extra-Solution Activity

*Bilski*, and earlier Federal Circuit decisions, require that "even if a claim recites a specific machine," the function that machine performs "must not constitute mere 'insignificant [extra-]solution activity.'" *Bilski*, 545 F.3d at 957. In *In re Schrader*, 22 F.3d 290 (Fed. Cir. 1994), the court found that the recitation of a data storage step was insufficient to impart patentability. *Id.* at 294. The *Schrader* patent claimed a method for running an auction. The court found that the algorithm was essentially a two-step process of receiving bids for subparts of a whole (such as real estate lots in a subdivision), and selecting the combination of bids that resulted in the highest (or lowest) overall value. *Id.* at 293. The court rejected the argument that the claimed step of entering the bids in a "record" was sufficient to convert this unpatentable abstract idea into a patentable process, and instead found that entering or storing data in a record was merely insignificant extra-solution activity. *Id.* at 294. Similarly, in *Grams*, the Federal Circuit determined that gathering input data for a process was insignificant extra-solution activity. *See Grams*, 888 F.2d at 839 ("[T]he addition of the old and necessary antecedent steps of establishing values for the variables in the equation cannot convert the unpatentable method to patentable subject matter.").

In exemplary claim 81, the order status tracking method consists of five steps: (1) placing an order, (2) entering order data into a database, (3) tracking the order status, (4) entering the order status data into a database, and (5) communicating the status. Biddinger Decl. Ex. A, col. 50, ll. 22-30. The heart of the method is steps (1) and (3) — placing an order and tracking its status. There is no reasonable dispute that this age-old business process is an unpatentable abstract idea. Such a process cannot become patentable by adding the extraneous data storage and communication steps (2), (4), and (5).

Like the claims in *Schrader* and *Grams*, the use of a relational database to store data and the Web to communicate data are merely insignificant extra-solution activities. Regardless of the particularity of the machine, if the machine is merely used for insignificant extra-solution activity, it cannot convert an unpatentable abstract idea to a patentable process. *Bilski*, 545 F.3d at 957. In this case, the storing and communicating steps are insignificant extra-solution activities. Just as entering bids in a record in *Schrader* was insignificant extra-solution activity, so is storing data in a database. *See Schrader*, 22 F.3d at 294 ("[T]he step of entering data into a 'record' is implicit in any application of a mathematical algorithm."). Additionally, communicating the results of the process is insignificant post-solution activity in the same way that gathering data was insignificant pre-solution activity in *Grams.* This insignificant extra-solution activity (whether before, during, or after) cannot save an otherwise unpatentable algorithm. To hold otherwise would negate 35 U.S.C. § 101 by permitting abstract ideas to be patented simply by adding some reference to storing data or outputting data. *See CyberSource*, 620 F. Supp. 2d at 1077 ("A different rule would eviscerate section 101, because any 'competent draftsman could attach some form of [extra]-solution activity to almost any mathematical formula,' or for that matter, mental process." (quoting *Bilski*, 545 F.3d at 957)).

### 4. The Remaining Claim Terms Fail For The Same Reasons

Although each of the Asserted Claims uses different verbiage, when it comes to potential machine elements, each of the Asserted Claims is as deficient as claim 81. Just as merely reciting the "Web" or invoking "Web-enabled relational database system" fails the *Bilski* machine test, so do the claim elements of the other thirteen Asserted Claims. The following table sets forth, generously, the claim terms of these thirteen claims that Plaintiff may contend relate to machines or machine elements. As described below, each of these elements suffers the same fate as "Web" and "Web-enabled relational database system."

| Potential Machine Elements | '690 Patent | '275 Patent |
|---|---|---|
| Web commerce system / automated Web commerce system / end-to-end business commerce system | 54, 76 | 4, 13, 16, 18 |
| Computer net/computer network/Web | 43, 50, 54, 74, 77 | 1, 4 |
| Web-enabled relational database management system/Web-enabled, client-server relational database management system/database | 4, 36, 43, 50, 77 | 1, 4, 11, 13, 16 |
| Relational database server/server platform/Web server | 36, 43, 50, 54 | 4, 16 |
| Display/user interface/display screen | 76 | 11, 13, 16 |

That these purported machine elements do not satisfy *Bilski*'s requirement of a particular machine follows directly from the discussion above, as they are not meaningfully different from "Web" or "relational database system" in the context of the Asserted Claims. The terms "computer net," "computer network," "web commerce system," "relational database server," "server platform," and "Web server" comprise the Web and/or relational database system, and fail for the same reasons as "Web-enabled relational database management system." The term "end-to-end business commerce system" is even more easily rejected, as it is unrelated to any machine in the first instance. *See Harris*, 2009 WL 86719, at *5 (explaining that conducting an auction "over a network" does not specify "an electronic [network] as contrasted with [a] societal network"). And finally, the "display" terms merely relate to generic computer components that fail to identify a particular machine and are incidental to the claimed process. *DealerTrack*, 2009 WL 2020761, at *4.

**C.** **The Asserted Claims Do Not "Transform A Physical Article Into A Different State Or Thing"**

To satisfy *Bilski*'s "transformation" test, a claimed process must effect a transformation of a physical object or substance, or *data representative of a physical object or substance*, into a *different state or thing*. *Bilski*, 545 F.3d at 962-63. For example, a method of synthesizing a particular chemical compound effects a transformation of the starting materials into a different compound. *Id*. at 962. Similarly, a method of converting X-ray image data representing bones or other body tissue into a visual image of those physical objects is a transformation. *See In re Abele*, 684 F.2d 902, 908-09 (C.C.P.A. 1982), *abrogated on other grounds by Bilski*, 545 F.3d at 958-59 & n.17. As described below, the Asserted Claims, in contrast, do not involve *Bilski* transformations. They are non-transformative business processes acting on abstractions and intangible objects.

**1.** **The Process Steps Of The Asserted Claims Involve Non-Transformative Business Processes**

The Asserted Claims involve entering, selecting, gathering, organizing, analyzing, posting, evaluating, requesting, communicating, receiving, defining, and storing data. *See* Biddinger Decl. Ex. C. Transformation under *Bilski* into *a different state or thing* requires more than these types of processes — substantially more.

First, the *Bilski* court expressly stated that steps involving gathering data are not transformations. *See Bilski*, 545 F.3d at 963 ("[A]dding a data-gathering step to an algorithm is insufficient to convert that algorithm into a patent-eligible process."). Entering, analyzing, organizing, and indexing data also fall short of the mark. In *Schrader*, the Federal Circuit found claims unpatentable that were directed to a method of conducting an auction, where bids were analyzed, indexed, and entered into a record. *Schrader*, 22 F.3d at 291. Specifically, the court found that the "claimed process involves only *information exchange and data*

*processing* and does not involve a process of transforming or reducing an article to a different state or thing." *Id.* at 292 (emphasis added). It similarly found recording and storing data to be non-transformative. *Bilski*, 545 F.3d at 957 n.14 (citing *Schrader*, 22 F.3d at 294) ("[A] simple recordation step in the middle of the claimed process [is] incapable of imparting patent-eligibility under § 101[.]"). The Federal Circuit explained in *Bilski* that recordation and data gathering are simply "extra-solution" or "post-solution" activities that do not constitute transformation, and do not render the claims patentable. *Id.* Substantially all of the process steps of the Asserted Claims echo those that have been consistently rejected by the courts as non-transformative.

To the extent the process steps at issue here require more than data gathering or its equivalent (e.g., entering, posting, and communicating) they are, at best, data manipulations, not transformations. In *CyberSource*, Judge Patel elaborated on the distinction between unpatentable manipulation and patentable transformation. *CyberSource*, 620 F. Supp. 2d at 1073-74. The court noted that "'[t]ransformation' suggests a fundamental change, whereas 'manipulation' does not." *Id.* at 1073. This distinction is reflected in the oft-repeated definition of a "transformation": a transformation into a ***different state or thing***. *Diehr*, 450 U.S. at 192; *Benson*, 409 U.S. at 70; *Bilski*, 545 F.3d at 954. Manipulation may entail the rearrangement or analysis of data, whereas transformation requires changing the nature of the data or the object that the data represent.[10]

In *CyberSource*, the claims were directed to gathering data about credit card numbers that originate from a particular Internet address, creating a "map" from those numbers, and analyzing the map to detect credit card fraud. The Court

---

[10] The court also found that equating "transformation" with "manipulation" would weaken the machine-or-transformation test, counter to the Federal Circuit's intentions in *Bilski*. *CyberSource*, 620 F. Supp. 2d at 1073; *see also Bilski*, 545 F.3d at 962 (Federal Circuit case law has taken a "measured approach" to the question whether electronically manipulated data and business methods are patentable, and there is no reason to expand that approach).

held that these steps merely manipulated, rather than transformed, the data: "The processes claimed . . . unquestionably 'manipulate' credit card numbers by using them to build a 'map.' But it is equally clear that neither credit card numbers nor credit cards are 'transformed.'" *CyberSource*, 620 F. Supp. 2d at 1073. Similarly, in *Bilski*, the claims were directed to gathering data related to commodities, analyzing the data to determine transactions that hedge or balance risk, and initiating transactions based on that analysis. The court held that these data manipulation steps were a "non-transformative process" that would preempt the abstract concept of hedging. *Bilski*, 545 F.3d at 965-66.

The process steps here are similarly non-transformative. For example, claim 1 of the '275 patent claims a method of processing returns over the Web. The data make up the workflow process for the return, the return record, and the preexisting database record to which the return record relates. The data that make up the transaction records are not transformed into a different state or thing; at every stage of the claimed process, they retain their characteristics as electronic signals in the same form. *Cf. Abele*, 684 F.2d at 908-09. Similarly, the steps of claim 81, discussed in the "Machine" section above, involve entering an order, tracking each significant event in the order process, and communicating the order status. The data are thus inputted, reviewed, updated, and communicated, but not transformed in any sense.

As another example, claim 43 recites a process by which an authorized user identifies product parameters and obtains a price quote for the product that is stored for later use. The process steps of storing user privileges, authenticating and determining the privilege level, entering product parameters, identifying products, selecting at least one product, requesting a price quote, producing and displaying a price quote, and storing the price quote are all non-transformative actions. As yet another example, claim 4 of the '275 patent is directed to a method for transaction

1   processing, where information specifying the subject of a transaction is gathered

2   and organized, but not transformed.

3          Each of the Asserted Claims likewise involves a non-transformative

4   process that, at best, manipulates but does not transform data.  Biddinger Decl. Ex.

5   C.

6                  a.      **The Visual Depictions Of The Asserted Claims Are**

7                          **Not Patent-Eligible Transformations**

8          Asserted Claims 43 of the '690 patent, and 11, 13, and 16 of the '275

9   patent refer to the "display" of data.  As with the other process steps discussed

10  above, these visual depictions are not *Bilski*-qualifying transformations of articles.

11  Although the *Bilski* court stated that "the electronic transformation of . . . data itself

12  into a visual depiction in *Abele* was sufficient" to confer patent-eligibility, placed in

13  its proper context, this passage indicates merely that a process of *converting data*

14  that represent a physical object — such as X-ray data that represents bones, as in

15  *Abele* — into a visual depiction of that object is *itself* a transformation of the data.

16  *Bilski*, 545 F.3d at 963.  Indeed, although *Abele* held that a method of displaying X-

17  ray data obtained from X-ray photographs was a transformation of an article, it also

18  held that merely displaying (unspecified) data was *not* valid under § 101.  *Abele*,

19  684 F.2d at 907-09.  Here, the "displaying" steps of the above-referenced claims are

20  not the output of a conversion of object-representative data from one format to

21  another, as in *Abele*.  Rather, they are the output of data that are already stored in

22  the database.  *See, e.g.*, '275 patent, claim 11 ("A method of organizing and

23  displaying information stored within a database . . . displaying the categorized

24  items").  Moreover, as discussed below, the process steps of the Asserted Claims,

25  including the "displaying" steps, are not restricted to physical objects or data that

26  represent physical objects.

27

28

8631914.1

1        **2.    The Data Of The Asserted Claims Represent Abstractions,**
2              **Not Physical Objects or Substances**

3              With regard to the "physical object/data representing physical object"
4    part of the transformation test, the *Bilski* court clearly explained that "[p]urported
5    transformations or manipulations simply of public or private legal obligations or
6    relationships, business risks, or other such abstractions cannot meet the test because
7    they are not physical objects or substances, and they are not representative of
8    objects or substances." *Bilski*, 545 F.3d at 964.  Business records such as invoices,
9    price quotes, orders, and return records (e.g., Return Merchandise Authorizations),
10   as well as database files and ledger entries relating to those business records, are
11   neither physical objects nor data that represent physical objects.  They represent
12   abstractions — legal obligations regarding business transactions.  *See id.* at 963
13   (holding that commodity options, i.e., legal rights to purchase a commodity such as
14   coal at a given time and price, are neither physical objects or substances, nor
15   representative of physical objects or substances); *CyberSource*, 620 F. Supp. 2d at
16   1074 (holding that both a credit card number and the card represent a common
17   underlying abstraction — a credit card account — which is a series of rights and
18   obligations existing between an account holder or account holders, and a card
19   issuer, and thus cannot be the object of a transformation under *Bilski*); *Fort Props.,*
20   *Inc. v. Am. Master Lease, LLC*, 609 F. Supp. 2d 1052, 1056 (C.D. Cal. 2009)
21   (Guilford, J.) (holding that deedshares are not protectable "articles" under the *Bilski*
22   analysis because they "represent only legal ownership interests in property, [which]
23   are not physical objects").  These types of data, which are precisely the types of
24   data at issue here, are pure abstractions.

25             Some of the Asserted Claims describe operations that involve other
26   data that are similarly abstract: user privileges, information, significant events,
27   order status, workflow process, a classification scheme, user interface/user interface
28   controls, data, methods, virtual business departments, relational database

MEMORANDUM OF POINTS AND AUTHORITIES IN
                                                 SUPPORT OF MOTION FOR SUMMARY JUDGMENT

management system, and item table/item records.  *See* Biddinger Decl. Ex. C.
These items are also easily identified as purely intangible abstractions (which relate
to the aforementioned business transactions) that cannot credibly be said to
constitute physical objects or data that represent a physical object.

Even the claims that refer to "products," "merchandise," "items," or
"parts" do not involve a transformation of data that represent a physical object.
First, as discussed above, the data related to these items are not transformed.  For
example, claim 36 of the '690 patent involves "[a] user making modifications to a
record within a file" that belongs to a product domain, and claim 50 refers to "one
item of merchandise."  But the claimed processes involve merely recording
information.  As noted above, recording information is not a transformation of data.
Similarly, claim 81 of the '690 patent refers to "an order for a part."  However, the
method steps do not relate to transforming data representing the "part."  Instead,
they are placing an order for a part, and entering and tracking the order.

Second, the patent specifically describes the term "product" as
encompassing "financial products, subscriptions — anything that may be bought
and sold in a discrete transaction."  '690 Patent, col. 12, ll. 60-62.  Thus, by its own
terms, the patent defines a "product" to include intangible items, including financial
products and subscriptions, that the Federal Circuit explicitly excluded from the
protectable class of "articles."[11]  For a claimed process to pass muster under *Bilski*'s
transformation prong, however, it must be *restricted to* the transformation of a
physical object or object-representative data.  If the claimed process is broad
enough to encompass abstractions and intangible data, as with the claims at issue
here, then the claim as a whole is invalid.  This is clear from *Bilski* itself, where the
court held that because "the process as claimed encompasse[d] the exchange of

---

[11] Indeed, as the Plaintiff would have the claims understood, they appear to apply
equally to the same commodity options at issue in *Bilski*, which the Federal Circuit
explicitly found not to satisfy the "article" requirement of the transformation prong
of the machine-or-transformation test.  *Bilski*, 545 F.3d at 964.

only options" and was not limited to the exchange of tangible objects or substances, the claim swept in abstractions and was therefore was invalid. *Bilski*, 545 F.3d at 964; *see also id.* at 950.[12]

None of the four claim terms referenced above is necessarily restricted to tangible objects. Indeed, the terms "item," "merchandise," and "part" are no more restricted than "products." Thus, the Asserted Claims necessarily fail to meet the "transformation" criteria under *Bilski* because even if there is a transformation of data (which there is not, as shown above), those data do not represent a physical object.

**D.    All Of The Asserted Claims Are Method Claims**

By their terms, all of the Asserted Claims except for claim 16 of the '275 patent are process claims, i.e., they claim the steps of a process or method. Although claim 16 is nominally a "system" claim, for Section 101 purposes it should be treated as a process claim and thus scrutinized under the machine-or-transformation test like all of the other Asserted Claims. Like the method claims, claim 16 does no more than recite features of a general-purpose computer — a server running a database management system, a database, and software for reading records. Whether the claim is drafted as a computer wherein the method is carried out, or as a method carried out in a computer, the substance is the same — an unpatentable claim. *See In re Pardo*, 684 F.2d 912, 916 n.6 (C.C.P.A. 1982) ("Although some of appellants' claims are drawn to a 'general purpose data processor of known type operating under the control of a stored program,' such claims are treated as indistinguishable from the method claims for the purposes of

---

[12] *Abele*, which the *Bilski* court cited approvingly, demonstrates another application of this principle. There, an independent claim was held invalid because it recited a process that transformed any type of data, including data that were not necessarily representative of a physical object. In contrast, a dependent claim was upheld as valid because it limited the process to a transformation of a particular type of data, i.e., X-ray attenuation data — which, according to the application's specification, could be produced only by photographing a physical object, and hence the claim was restricted to object-representative data. *Abele*, 684 F.2d at 908.

section 101 unless it is demonstrated that the claims are drawn to specific apparatus distinct from other apparatus capable of performing the identical functions."); *In re Sarkar*, 588 F.2d 1330, 1333 (C.C.P.A. 1978); *Every Penny Counts, Inc. v. Bank of Am. Corp.*, No. 07-cv-42, at 4-5 (M.D. Fla. May 27, 2009). Thus, all of the arguments above demonstrating the unpatentability of the accused process claims apply equally to claim 16.

## V.    CONCLUSION

For the foregoing reasons, Defendants jointly request that the Court grant their motion for summary judgment that the Asserted Claims of the '690 and '275 patents are invalid under 35 U.S.C. § 101.

DATED: August 24, 2009

MUNGER, TOLLES & OLSON LLP
    GREGORY P. STONE
    ANDREA WEISS JEFFRIES
    GRANT A. DAVIS-DENNY
    ADAM R. LAWTON


_____/s/ Andrea Weiss Jeffries_____

Attorneys for Defendant
HEWLETT-PACKARD COMPANY

DYKEMA GOSSETT LLP
    CRAIG HENTSCHEL

ROPES & GRAY LLP
    ROBERT MORGAN
    DENISE L. LORING
    BRIAN BIDDINGER
    BRIAN E. MACK

FENWICK & WEST
    LYNN PASAHOW
    J. DAVID HADDEN
    DARREN DONNELLY
    RYAN MARTON
    HECTOR RIBERA
    MASHHOOD RASSAM

_____/s/ Brian Biddinger_____

_____/s/ Darren Donnelly_____

Attorneys for Defendant
AMERICAN HONDA MOTOR CO., INC.

Attorneys for Defendant
STAPLES, INC.

| | | |
|---|---|---|
| BAUTE & TIDUS<br>  MARK D. BAUTE<br>  PATRICK M. MALONEY | CHRISTOPHER YOST<br>R. JEFFREY KELSEY |
| | FINNEGAN, HENDERSON,<br>FARABOW, GARRETT & DUNNER,<br>LLP<br>  JEFFREY A. BERKOWITZ |

_____/s/ Patrick Maloney_____          _____/s/ Jeffrey Berkowitz_____

Attorneys for Defendant<br>AMERISOURCEBERGEN<br>CORPORATION

Attorneys for Defendant<br>FEDEX CORPORATION

ALSTON & BIRD LLP<br>  PATRICK J. FLINN<br>  MICHAEL NEWTON<br>  LOUIS A. KARASIK

BAKER BOTTS LLP<br>  DARRYL ADAMS<br>  KEVIN MEEK<br>  JAMES CANNON

_____/s/ Michael Newton_____          _____/s/ Darryl Adams_____

Attorneys for Defendant<br>DELL INC.

Attorneys for Defendant<br>INGRAM MICRO, INC.

ORRICK HERRINGTON &<br>SUTCLIFFE LLP<br>  LISA WARD

JONES DAY<br>  RICHARD GRABOWSKI<br>  LAWRENCE R. LAPORTE<br>  DAVID A. RANDALL

_____/s/ Lisa Ward_____          _____/s/ Lawrence R. LaPorte_____

Attorneys for Defendant<br>INTEL CORP.

Attorneys for Defendant<br>UTI WORLDWIDE, INC.

ALSTON & BIRD LLP
  PATRICK J. FLINN
  ROBERT L. LEE
  LOUIS A. KARASIK
  KAMRAN JIVANI
  MITRA M. ESKANDARI-AZARI


      /s/ Robert Lee
  _____

Attorneys for Defendant
UNITED PARCEL SERVICE, INC.