1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BIG BABOON, INC.,                    )    CV 09-1198 SVW (SSx)
                                     )
                Plaintiff,           )
                                     )    ORDER INVITING FURTHER
          v.                         )    BRIEFING ON THE PATENTABILITY
                                     )    OF MACHINE-BASED PROCESSES
DELL INC., et al.,                   )
                                     )
                Defendants.          )
_____      )
                                     )

     For well over a century there has been confusion regarding the

patentability of processes.  See generally William B. Whitney,

Patentable Processes, 19 Harv. L. Rev. 30 (1905).  Despite providing

some clarity on this question in In re Bilski, the Federal Circuit left

open a number of questions deserving greater attention.  See generally

In re Bilski, 545 F.3d 943 (2008) (en banc).

     In the course of examining the "precise contours" of the Bilski

court's "machine" test, see 545 F.3d at 962, the Court has identified

an interesting precedent: O'Reilly v. Morse, 56 U.S. 62 (1853).

     The Morse case is not particularly obscure; in fact, it is one of

the bedrock cases in American patent jurisprudence.  However, in

discussing Morse, courts often focus on Samuel Morse's eighth patent claim, by which he attempted to claim all uses of electromagnetism to transmit print and visual communication.  In contrast, courts have offered relatively little discussion of Morse's fifth patent claim. But cf. In re Nuijten, 500 F.3d 1346, 1357 n.9 (Fed. Cir. 2007) (discussing Morse's fifth claim).

This Court would like to focus the parties' attention on Morse's fifth patent claim, which claimed Morse code as used via telegraph. The Court believes that Morse code may be relevant to the present case.

In his original 1837 petition to the Commissioner of Patents, Morse described his fifth claim as "[a] dictionary or vocabulary of words, numbered and adapted to this system of telegraph."  56 U.S. at 82.  In the 1848 reissue of the patent, Morse's fifth claim recited "the system of signs, consisting of dots and spaces, and of dots, spaces, and horizontal lines, for numerals, letters, words, or sentences, substantially as herein set forth and illustrated, for telegraphic purposes."  Id. at 86.

When the patents went before the Supreme Court, opposing counsel challenged the claim for Morse Code.  Counsel asserted "[t]hat the thing[] claimed in the fifth . . . claim[] [is] not patentable."  Id. at 101.  Counsel for Morse defended this claim as being "a claim to the system of signs, composed of dots, spaces, and horizontal lines, (susceptible of being variously combined, representing numerals, words, and sentences,) for telegraphic purposes; being an improved instrumentality in the art of telegraphing by electricity or

///

///

2

galvanism." <u>Id.</u>  Morse's counsel also argued that "[t]he art[1] is distinct from the means employed in its exercise; both may be, and under this patent are, patented." <u>Id.</u>  (At first glance, this Court reads this sentence as arguing that Morse's process for Morse Code via telegraph was entirely separate from Morse's patent for the telegraph itself.)

In examining Morse's fifth claim, the Supreme Court held: "We perceive no well-founded objection . . . to his right to a patent for the first seven inventions set forth in the specification of his claims." <u>Id.</u> at 112.  In other words, the fifth claim recited patentable subject matter.

In the present case, the Court wishes to consider the parties' views on the question of whether Morse's fifth patent claim is analogous to the patents claimed by Plaintiff.  The Court notes that both cases appear to involve a patent for a method of communicating over a machine designed to enable communication.  The Court further notes that there may be some parallels between the electromagnetic telegraph in Morse's fifth claim and the "Web-enabled computer"[2] in Plaintiff's various claims.  <u>Cf.</u> Daniel Walker Howe, <u>What Hath God Wrought: The Transformation of America, 1815-1848</u>, at 690-98 (Oxford

---

[1] The Court notes that the term "art" in § 101 was later replaced by "process" without changing the meaning of the statute.  <u>See</u> <u>Bilski</u>, 545 F.3d at 966-67 (Dyk, J., concurring) (citing <u>Diamond v. Diehr</u>, 450 U.S. 175, 182 (1981); <u>Diamond v. Chakrabarty</u>, 447 U.S. 303, 309 (1980)).

[2] Claim 18 of the '275 Patent does not explicitly recite the use of internet-enabled computers.  However, Plaintiff's preferred construction of this claim is that it includes a database management system that is internet-accessible.  (<u>See</u> Pl.'s Response to Defs.' SUF, ¶¶ 168, 171.)  Defendants have agreed to adopt this construction for purposes of the present Motion.  (Defs.' Motion at 4 n. 7.)

History of the United States, 2007) (discussing widespread commercial
use of Morse's telegraph in mid-Nineteenth Century[3]).

    Yet it may be that Morse code and Plaintiff's patents involve
entirely different types of processes.  Perhaps Morse Code is better
analogized to the digital packets of ones and zeros that flow from
computer to computer using a standardized transmission protocol such as
Transmission Control Protocol/Internet Protocol (TCP/IP).  Perhaps a
patent cannot issue for a process of organizing content in a manner
that builds on a different process (such as TCP/IP transmission of data
packets) that is used to communicate between machines.[4]

    In considering these issues, the Court recognizes the possibility
that Plaintiff's "Web-enabled computer" might be construed in a manner
that would distinguish it from Morse's electromagnetic telegraph.
That, however, may be a question to be addressed during claim
construction proceedings.

    In addition, the Court also recognizes the possibility that
Plaintiff's "method" or "process" is less well-defined and novel than
Morse's system of communication.  That too may be a question for later
proceedings.

    At the present moment, though, the Court wishes to hear the
parties' views on the Morse case, as well as any other examples of

_____

[3] In light of the widespread commercial use of the telegraph during that time
period, the Court would be willing to consider the parties' arguments (if they
believe that such views are relevant to the present case) as to whether Morse ever
enforced or licensed his Morse Code patent, and whether other individuals ever
attempted to patent a process that utilized a Morse Code-based telegraph.

[4] In this vein, the Court calls the parties' attention to Berardini v. Tocci, 190
F. 329 (C.C.S.D.N.Y. 1911), aff'd 200 F. 1021 (2d Cir. 1912), a case whose
relevance may be limited by its own facts as well as subsequent doctrinal
developments.  Even so, the case may provide the parties with useful research
leads.

4

1    court-approved process patents that satisfy <u>Bilski</u>'s "machine" prong.

2    The Court hopes that the parties will avoid reciting cases that fit

3    more properly under the <u>Bilski</u> "transformation" prong, as the Court is

4    interested in finding examples of patentable machine-based processes

5    that are not connected with any physical or chemical transformation.

6    The Court is particularly interested in Supreme Court caselaw on this

7    question, as the Federal Circuit's caselaw appears to be in flux.[5]

8         Further, the Court notes that courts have constructed a remarkable

9    body of dicta suggesting that one may not patent a process that merely

10   operates a piece of machinery.   <u>See, e.g.</u>, <u>Boyden Power-Brake Co. v.</u>

11   <u>Westinghouse</u>, 170 U.S. 537, 557 (1898) ("Where the process is simply

---

13   [5] In its own review of the caselaw, the Court has identified the following Federal
14   Circuit cases as potentially satisfying the <u>Bilski</u> machine test: <u>AT & T Corp. v.</u>
     <u>Excel Comms., Inc.</u>, 172 F.3d 1352 (Fed. Cir. 1999); <u>State Street Bank & Trust Co.</u>
15   <u>v. Signature Fin. Group</u>, 149 F.3d 1368, 1370 (Fed Cir. 1998); <u>In re Alappat</u>, 33
     F.3d 1526 (Fed. Cir. 1994) (en banc).
16        These cases are, of course, subject to some doubt in the wake of <u>Bilski</u>.   <u>See</u>
     <u>Bilski</u>, 545 F.3d at 960 n.19 ("[T]hose portions of our opinions in <u>State Street</u> and
17   <u>AT & T</u> relying solely on a 'useful, concrete and tangible result' analysis should
     no longer be relied on."); <u>id.</u> at 995 (Newman, J., dissenting) ("The [majority]
18   avoids saying whether the <u>State Street Bank</u> and <u>AT & T v. Excel</u> inventions would
     pass the new test.").
19        Further, these cases may be distinguishable from ours.  For example, <u>State</u>
     <u>Street</u> may be distinguishable as involving claims for a <u>machine</u> rather than a
     <u>process</u>.  <u>See</u> 149 F.3d at 1371-72; <u>see also</u> <u>Bilski</u>, 545 F.3d at 959 n.18.  In
20   addition, <u>Alappat</u> may be distinguishable because the process at issue in <u>Alappat</u>
     improved the physical operation of the machine to which it was tied.  In fact, in
21   the <u>Alappat</u> court's own words, the patent at issue, "properly construed, claims a
     machine" rather than a process.  33 F.3d at 1541.
22        Somewhat confusingly, in <u>In re Comiskey</u>, 554 F.3d 967, 979 n.14 (Fed. Cir.
     2009), the Federal Circuit cited these cases approvingly and even suggested another
     example of a process patent satisfying the "machine" test: <u>Arrhythmia Research</u>
23   <u>Tech., Inc. v. Corazonix Corp.</u>, 958 F.2d 1053, 1060 (Fed. Cir. 1992).  This Court
     firmly disagrees with such a reading of <u>Arrhythmia</u>, as that case involved the
24   physical transformation of analog signals into digital signals.  The <u>Arrhythmia</u>
     court itself asserted: "These claimed steps of 'converting,' 'applying,'
     'determining,' and 'comparing' are <u>physical</u> process steps that <u>transform one</u>
25   <u>physical, electrical signal into another</u>."  958 F.2d at 1060 (emphasis added).
26        The Court finds it difficult to synthesize the Federal Circuit's caselaw.
     Perhaps they are simply examples of "the necessarily imperfect means by which the
     courts express their estimates of the relative merits of the inventions between
27   which they must choose."  <u>Patents - Patentability - "Function of a Machine</u>," 39
     Yale L.J. 1066, 1067 (1930).  The parties may attempt to attempt a synthesis if
     they desire.  However, in doing so they should be careful to distinguish between
28   dicta and holdings.

the function or operative effect of a machine, the . . . cases are
conclusive against its patentability."). However, in light of <u>Bilski</u>'s
explicit use of the "machine" test, and in light of the holding in
<u>Morse</u>, the Court feels that such dicta ought to be ignored. The Court
is interested in examining precisely which <u>precedential</u>
<u>holdings</u> constitute the <u>Bilski</u> machine test.

　　　If the parties wish to address these issues, they may file
concurrent briefs with the Court. They have until Friday, October 9,
2009 to file ten-page opening briefs, and until Friday, October 16,
2009 to file six-page replies.



　　　　　　IT IS SO ORDERED.

DATED:  September 25, 2009

STEPHEN V. WILSON
UNITED STATES DISTRICT JUDGE